UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

| | | |
|---|---|---|
| **ROBERT KENNEDY, individually and on behalf of all others similarly situated,** § § § | **CASE NO: 7:20-cv-00086** | |
| Plaintiffs, § § | | |
| v. § § | **JURY TRIAL DEMANDED** | |
| **PIONEER NATURAL RESOURCES COMPANY,** § § § § | | |
| Defendant. § § | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** | |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Plaintiff Robert Kennedy brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA") against Defendant Pioneer Natural Resources Company (Pioneer).

2.      Kennedy and the other workers like him regularly worked for Pioneer in excess of 40 hours each week.

3.      But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

4.      Instead of paying overtime as required by the FLSA, Pioneer paid these workers a daily rate with no overtime pay. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

5.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial

portion of the events giving rise to this action occurred in this District.

7. Kennedy worked for Pioneer in this District in Midland County, Texas.

## THE PARTIES

8. Kennedy performed work for Pioneer as a Construction Manager from approximately September 2018 through April 2019. Throughout his time with Pioneer, he has been paid a day-rate with no overtime compensation. His consent to be a party plaintiff is attached as **Exhibit A**.

9. Kennedy brings this action on behalf of himself and all other similarly situated workers paid by Pioneer's day-rate system. Pioneer paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA. The FLSA class of similarly situated workers consists of:

> **Current and former oilfield workers employed by or performing work on behalf of Pioneer Natural Resources Company and paid a day-rate without overtime during the past three years** (the "Day Rate Workers").

10. Pioneer is a company doing business throughout the United States. Pioneer may be served by serving its registered agent: CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

## COVERAGE UNDER THE FLSA

11. For at least the past three years, Pioneer has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

12. For at least the past three years, Pioneer has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

13. For at least the past three years, Pioneer has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on

goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

14. For at least the past three years, Kennedy and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

15. Pioneer treated Kennedy (and indeed all its oilfield workers that it classified as independent contractors) as employees and uniformly dictated the pay practices to which Kennedy and its other employees (including its so-called "independent contractors") were subjected.

16. Pioneer's misclassification of Kennedy as an independent contractor does not alter its status as an employer for purposes of this FLSA collective action.

## FACTS

17. Pioneer is a Texas-based independent oil, gas exploration, and production company which operates in the Permian Basin.

18. To complete its business objectives, Pioneer hires personnel to perform the necessary work. Over the past three years, Pioneer employed dozens of individuals – including Kennedy – as Construction Managers, Chief Inspectors, Inspectors, Rig Clerks, Completions Supervisors, Completions Superintendents, and Drilling Supervisors (or similar positions) in several states.

19. While exact job titles and job duties may differ, these workers are subjected to the same or similar illegal pay practices for similar work. Specifically, Pioneer paid these workers a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

20. For example, Kennedy worked for Pioneer starting in approximately September 2018 through April 2019 as a Construction Manager at Pioneer's Tank Battery Facility in Midland, Texas. Throughout his time with Pioneer, he was paid on a day-rate basis.

21. As a Construction Manager, Kennedy's primary job duties included monitoring the work of Pioneer's inspectors and ensuring that the construction of the tank battery facility is in accordance to applicable safety and quality control standards. Kennedy worked well in excess of 40 hours each week while employed by Pioneer.

22. The work Kennedy performed was an essential part of Pioneer's core business.

23. During Kennedy's employment with Pioneer while he was classified as an independent contractor, Pioneer exercised control over all aspects of his job. Pioneer did not require any substantial investment by Kennedy for him to perform the work required of him.

24. Pioneer paid Kennedy through various staffing companies throughout his tenure.

25. Pioneer determined Kennedy's opportunity for profit and loss.

26. Indeed, Pioneer controlled all the significant or meaningful aspects of the job duties performed by Kennedy.

27. Pioneer ordered the hours and locations Kennedy worked, tools used, and rates of pay received.

28. Pioneer controlled all aspects of Kennedy's job activities by enforcing mandatory compliance with Pioneer's policies and procedures.

29. No real investment was required of Kennedy to perform his job. More often than not, Kennedy utilized equipment provided by Pioneer to perform his job duties.

30. These workers carry out the hands-on, day-to-day production work of Pioneer.

31. Kennedy did not provide the equipment he worked with on a daily basis.

32. Pioneer made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Kennedy worked.

33. Kennedy did not incur operating expenses like rent, payroll and marketing.

34. Kennedy was economically dependent on Pioneer during his employment.

35. Pioneer set Kennedy's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for Pioneer.

36. Pioneer directly determined Kennedy's opportunity for profit and loss. Kennedy's earning opportunity was based on the number of days Pioneer scheduled him to work.

37. Very little skill, training, or initiative was required of Kennedy to perform his job duties.

38. Indeed, the daily and weekly activities of the Day Rate Workers were routine and largely governed by standardized plans, procedures, and checklists created by Pioneer.

39. Virtually every job function was pre-determined by Pioneer, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

40. The Day Rate Workers were prohibited from varying their job duties outside of the pre-determined parameters. Moreover, the job functions of the Day Rate Workers were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

41. The Day Rate Workers did not have any supervisory or management duties.

42. For the purposes of an FLSA overtime claim, the Day Rate Workers performed substantially similar job duties related to servicing oil and gas operations in the field.

43. Kennedy performed routine manual and technical labor duties that were largely dictated by Pioneer.

44. Kennedy was not employed by Pioneer on a project-by-project basis.

45. In fact, while Kennedy was classified as an independent contractor, he was regularly on call for Pioneer and was expected to drop everything and work whenever needed.

46. The Day Rate Workers also worked similar hours and were denied overtime as a result of the same illegal pay practice. The Day Rate Workers all worked in excess of 40 hours each week and were often scheduled for 12-hour shifts for weeks at a time. Instead of paying them overtime, Pioneer paid the Day Rate Workers a day-rate. Pioneer denied the Day Rate Workers overtime for any hours worked in excess of 40 hours in a single workweek.

47. Pioneer's policy of failing to pay its independent contractors, including Kennedy, overtime violates the FLSA because these workers are, for all purposes, employees performing non-exempt job duties.

48. It is undisputed that the contractors are maintaining and working with oilfield machinery, performing manual labor, and working long hours out in the field.

49. Because Kennedy (and Pioneer's other independent contractors) was misclassified as an independent contractor by Pioneer, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

50. Despite knowing the FLSA's requirements, Pioneer failed to pay Kennedy and the Day Rate Workers overtime for hours worked in excess of 40 hours in a single workweek.

## FLSA VIOLATIONS

51. Kennedy incorporates the preceding paragraphs by reference.

52. As set forth herein, Pioneer violated the FLSA by failing to pay Kennedy and the Class Members overtime at 1 and ½ times their regular rate of pay, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

53. Pioneer knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Day Rate Workers overtime compensation. Pioneer's failure to pay

overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

54. Accordingly, Kennedy and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

### COLLECTIVE ACTION ALLEGATIONS

55. Kennedy incorporates all previous paragraphs and alleges that the illegal pay practices Pioneer imposed on them were likewise imposed on the members of the class.

56. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

57. Numerous other individuals who worked with Kennedy indicated they were improperly classified as contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

58. Based on his experiences and tenure with Pioneer, Kennedy is aware that Pioneer's illegal practices were imposed on the members of the class.

59. Pioneer used day rate contractors across the United States.

60. The members of the class were all improperly classified as contractors and not afforded overtime compensation when they worked in excess of forty 40 hours per week.

61. Pioneer is the true employer of Kennedy and the Day Rate Workers.

62. Pioneer's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the members of the class.

63. Kennedy's experiences are therefore typical of the experiences of the members of the class.

64. The specific job titles or precise job locations of the various members of the class do not prevent class or collective treatment.

65. Kennedy has no interests contrary to, or in conflict with, the members of the class. Like each member of the class, Kennedy has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

66. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

67. Absent this action, many members of the class likely will not obtain redress of their injuries and Pioneer will reap the unjust benefits of violating the FLSA.

68. Furthermore, even if some of the members of the class could afford individual litigation against Pioneer, it would be unduly burdensome to the judicial system.

69. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

70. The questions of law and fact common to each of the members of the class predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   (a) Whether Pioneer employed the members of the class within the meaning of the FLSA;

   (b) Whether the members of the class were improperly misclassified as exempt;

   (c) Whether Pioneer's decision to classify the members of the class as exempt was made in good faith;

   (d) Whether Pioneer's decision to not pay time and a half for overtime to the members of the class was made in good faith;

   (e) Whether Pioneer's violations of the FLSA was willful; and

   (f) Whether Pioneer's illegal pay practices were applied uniformly across the nation to all members of the class.

71. Kennedy's claims are typical of the claims of the members of the class. Plaintiffs and the members of the class sustained damages arising out of Pioneer's illegal and uniform employment policy.

72. Kennedy knows of no difficulty that will be encountered in the management of this litigation that would preclude their ability to go forward as a collective action.

73. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

## JURY DEMAND

74. Kennedy demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs pray for judgment against Pioneer as follows:

(a) For an order allowing this action to proceed as a FLSA collective action and directing notice to the class;

(b) For an order pursuant to section 16(b) of the FLSA finding Pioneer liable for unpaid back wages, and an equal amount of liquidated damages, due to Kennedy and the class members;

(c) For an order awarding Kennedy and the class members the costs of this action;

(d) For an order awarding Kennedy and the class members their attorneys' fees;

(e) For an order awarding Kennedy and the class members unpaid benefits and compensation in connection with the FLSA violations;

(f) For an order awarding Kennedy and the class members pre- and post-judgment interest at the highest rates allowed by law; and

(g) For an order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Michael A. Josephson*
    Michael A. Josephson
    State Bar No. 24014780
    Carl A. Fitz
    State Bar No. 24056278
    **JOSEPHSON DUNLAP LAW FIRM**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77005
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    cfitz@mybackwages.com

    **AND**

    Richard J. (Rex) Burch
    Texas Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    713-877-8788 – Telephone
    713-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFF**